**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STACEY LYNN STONE** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 5171 |
| | ) | |
| v. | ) | |
| | ) | |
| **CAROLYN COLVIN** | ) | Magistrate Judge Daniel G. Martin |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Stacey Lynn Stone ("Plaintiff" or "Stone") seeks judicial review of a final decision of Defendant Carolyn Colvin, the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for disability insurance benefits under the Social Security Act in an April 13, 2012 written decision of Administrative Law Judge ("ALJ") Denise McDuffie-Martin. Stone claimed that she became disabled on June 1, 2011. Her last insured date was December 31, 2006. She appealed the ALJ's ruling to this Court and filed a Motion for Summary Judgment that seeks to reverse the Commissioner's decision. The Commissioner filed a short cross-motion whose substantive portions amount to approximately four pages. The Court only addresses Stone's claims briefly because the ALJ's decision is erroneous on its face. Indeed, even a cursory review of her findings shows such pervasive and obvious flaws that it is difficult to understand why the case was not voluntarily remanded.

Stone contests the ALJ's decision concerning the residual functioning capacity ("RFC") assessment. Before discussing that topic, the Court raises several concerns of

its own. A reviewing court may *sua sponte* address issues in social security cases. *See*, *e.g.*, *Wenzlick v. Astrue*, 2009 WL 2777711, at *2 (E.D. Mich. Aug. 28, 2009) ("Several courts have found that a reviewing court may order remand *sua sponte*.") (citing cases); *Womack v. Astrue*, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008) (citing cases).

The first concerns the ALJ's credibility finding. ALJ McDuffie-Martin thought that Stone's allegations were not fully credible. The ALJ supported that finding by stating that Stone only received sparse treatment for her severe mental disorders, and that medications improved her condition. That was insufficient to assess the important topic of mental health treatment. The fact that Stone may have "improved" with medication does not explain why her statements concerning the intensity of her symptoms were not credible. A claimant can improve from one functional state to another and still be unable to engage in competitive work on a sustained basis. *See A.H. ex rel. Williams v. Astrue*, 2011 WL 1935830, at *11 (N.D. Ill. May 18, 2011) (discussing the issue in relation to childhood disability). The ALJ's job was to assess how Stone's statements conformed with her *actual* functioning, not whether she had "improved."

Moreover, the ALJ underestimated the extent of Stone's treatment. Stone told the ALJ that in addition to medications she had also been treated with electroconvulsive therapy ("ECT"). ECT is ordinarily a treatment of last resort. *See* http://www.webmd.com/depression/guide/electroconvulsive-therapy ("ECT is generally used when severe depression is unresponsive to other forms of therapy."). The ALJ could not rely on alleged improvements triggered by Stone's medications without accounting for the full range of serious medical treatment that she received.

The ALJ's reliance on gaps in Stone's treatment was also erroneous without more careful attention to the facts surrounding that claim. A claimant's failure to pursue treatment, or her inconsistent compliance with a doctor's recommendations, can be a basis for finding the claimant's testimony to be less than fully credible. *See* SSR 96-7p. However, such non-compliance must be handled with caution before using it against a claimant. Social Security Ruling 96-7p warns that an ALJ must "not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record."

ALJ McDuffie-Martin did not ask Stone to explain anything about her treatment gaps. Not only does SSR 96-7p clearly require her to have done so, Stone herself raised serious questions on the issue at the hearing. She told the ALJ that one early therapist advised her "to disown my family." (R. 19). She also stated that she stopped seeing psychiatrist Dr. Bodapoti because Stone was afraid to tell her family that the doctor was advising that Stone give up her new baby for adoption because of Stone's mental problems. Stone also suspected that Dr. Bodapoti (who admitted Stone to a psychiatric hospital) "was a bad doctor." (R. 19-20).

The Court recognizes that Stone's treatment history (or lack of it) extended beyond Dr. Bodapoti. But her startling comments raise obvious red flags about Stone's experience with mental health treatment. The Court finds the ALJ's silence on these issues, both at the hearing and in her decision, disturbing. She was clearly obligated to consider how a person suffering from serious mental problems might have approached future treatment when a psychiatrist advocated removing her from her newborn child, and another therapist

told her to "disown" her family.  It may have made Stone skittish about treatment.  It may also have had no effect at all.  Without delving into the issue, however, the ALJ had no legitimate basis for construing Stone's spotty treatment record against her.

In addition, the ALJ never considered whether Stone's mental impairment was itself an impediment to more regular treatment.  The Seventh Circuit and other courts have repeatedly stressed that "mental illness . . . may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006).  *See also Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2006); *White v. Comm. of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009).  That is particularly true when, as here, the claimant suffers from bipolar disorder.  *Kangail*, 454 F.3d at 630.  *See also Barnes v. Colvin*, — F. Supp.3d —, 2015 WL 764107, at *3 (N.D. Ill. Feb. 23, 2015) (citing cases); *Oreinti v. Astrue*, 958 F. Supp.2d 961, 977 (N.D. Ill. 2013) (stating that an ALJ must consider whether mental illness has prevented a claimant from seeking treatment); *Green v. Colvin*, 2013 WL 5320270, at *8 (N.D. Ind. Sept. 20, 2013).  The ALJ is directed to discuss these critical issues on remand and to draw a logical bridge from the full record and the required credibility factors in SSR 96-7p to her decision.

The ALJ also erred in her assessment of the weight to be given to the examining consultant psychologist Dr. Stevenson.  Stone saw Dr. Stevenson on June 7, 2011.  Dr. Stevenson's report was the only medical evaluation available concerning Stone's mental status.  No treating psychiatrist provided an opinion.  The ALJ did not have a psychological

4

expert available at the hearing. The non-examining state-agency psychologist did not provide an evaluation because he thought there was insufficient evidence in the file to do so – a finding that the ALJ inexplicably rejected without a clear explanation. (R. 67, "I found evidence to complete findings[.]").

That made a proper evaluation of Dr. Stevenson's report crucial to evaluating Stone's claims. The ALJ gave it "little weight." She cited three primary reasons: (1) Dr. Stevenson assigned Stone a GAF score of 75, (2) her report conflicted with the psychologist's treatment notes, and (3) the report post-dated Stone's last date insured. Each of these findings was an improper basis for discounting Dr. Stevenson's opinion.

The ALJ provided no explanation at all of why the GAF score warranted giving little weight to the expert's report. Courts have explained again and again that GAF scores do not always reflect a psychiatrist's assessment of the claimant's functional capacity. "GAF scores are intended to be used to make treatment decisions . . . not as a measure of the extent of an individual's disability." *Martinez v. Astrue*, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010). *See also Hunt v. Astrue*, 889 F. Supp.2d 1129, 1146 (E.D. Wis. 2012) ("GAF scores often vacillate."); *Perez v. Astrue*, 881 F. Supp.2d 916, 946-47 (N.D. Ill. 2012) ("[A] claimant cannot use a GAF score to establish disability[.]"). The ALJ's reliance on the GAF issue ignores the fact that disability is not assessed based solely on these scores. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that a GAF score "does not reflect the clinician's opinion of functional capacity"). *See also Young v. Colvin*, 2015 WL 519143, at *3 (S.D. Ind. Feb. 9, 2015) (observing that the SSA has concluded that GAF scores do "not have a direct correlation to the severity requirements in mental disorders listings").

This point is so well-established in the caselaw that the ALJ was obligated to explain why a highly-qualified expert like Dr. Stevenson could not have assigned a GAF score (relating to treatment decisions) and still have found that Stone suffered from serious mental difficulties that could have restricted Stone more fully than the ALJ believed. Part of such a consideration would have required the ALJ to account for the fact that Stevenson conducted multiple objective psychological tests on Stone, including the Beck Depression Index – II. Dr. Stevenson pointed out that Stone scored 32, which brought her near the bottom of the "severe (29-63) range" for depression. (R. 324).

The ALJ's reliance on a conflict between Dr. Stevenson's report and her "treatment notes" is baffling. The Court has no idea what the ALJ meant by treatment notes. Dr. Stevenson never treated Stone. The ALJ did not discuss what these alleged notes included. At a minimum, the ALJ was obligated to explain what the basis of her reasoning was on this issue and to explain in minimal form what the purported conflict involved.

The fact that Dr. Stevenson's report was given after Stone's last insured date fails to explain why the report deserved little weight. It is true that a claimant must establish that she was disabled prior to the last date on which she was insured. 20 C.F.R. § 404.131. Evidence of a disability obtained after the last date insured must relate back to the insured period to be of probative value. *See Moran v. Comm. of Soc. Sec.*, 40 F. Supp.3d 896, 920-21 (E.D. Mich. 2014). ALJ McDuffie-Martin never explained why that was the case with Dr. Stevenson's report. She merely set it aside as if the time difference were a sufficient basis in itself.

Courts have repeatedly rejected the proposition that post-insured evidence is of no value at all. An ALJ is required to base her decision on all the relevant evidence, "including

6

the evidence regarding plaintiff's condition at present." *Parker v. Astrue*, 597 F.3d 920, 925; *see also Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) ("Retrospective diagnoses of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). The Court does not find that the ALJ was required to accept Dr. Stevenson's assessment. But she could not reject it out of hand on this basis without explaining more carefully why its 2011 date justified doing so.[1]

That leaves the RFC issue that Stone raises in her motion. Stone contends through various arguments that the ALJ's RFC is erroneous because she failed to explain the basis of her opinion. The Court agrees that the ALJ made little or no effort to discuss her reasoning or to draw a logical bridge between the RFC and the record. Social Security Ruling 96-8p requires an ALJ to provide a narrative discussion of "how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." This includes a discussion of the claimant's ability to "perform sustained work activities in an ordinary work setting on a regular basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the

---

[1] The Court notes that the ALJ contradicted her own reasoning at Step 3 when she accepted statements concerning Stone's activities of daily living ("ADLs") while at the same time commenting that "this is evidence after the date last insured." (R. 64). The ALJ provided no explanation of why she was entitled to rely on post-insured evidence for one part of her decision but reject the same type of evidence at a later point.

record." SSR 96-8p.

ALJ McDuffie-Martin found that Stone could perform a full range of work if she were limited to "unskilled, simple, routine, repetitive tasks with no production quotas and is unable to work in a fast-paced environment." (R. 65). It is impossible to determine from the four corners of the ALJ's decision how she reached this finding. The ALJ had no medical opinion to rely on for the reasons stated above. The fact that the state-agency physician did not believe there was enough evidence to assess Stone's functioning did not concern the ALJ. In fact, she essentially rejected that conclusion by stating that "*I* found evidence to complete findings." (R. 67) (emphasis added). The Commissioner claims that the ALJ did not reject the state-agency doctor because she agreed that there was "scant" evidence available. But the ALJ's belief that she could reach a decision that the medical expert could not reach can only be construed as a rejection of his evaluation of the nature and sufficiency of the record. Neither the ALJ nor the Commissioner has explained how the ALJ thought that she was able to make conclusions that an expert psychologist could not make.

The Commissioner argues that the ALJ's reasoning is sufficient because the RFC is a legal decision that does not require a function-by-function assessment. The ALJ is only obligated to provide a narrative discussion that links the record to her findings. The Commissioner points out that the functional limitations that the ALJ assessed as part of the special technique used at Step 3 (moderate limitations in ADLs and concentration, mild restrictions in social functioning) were not RFC findings. The Commissioner claims that the ALJ "reasonably found that the functional limitations attributable to Stone's depression could be accommodated by a restriction to 'unskilled, simple, routine, repetitive tasks with

8

no production quotas' in an environment free of 'fast-paced' working conditions." (Dckt. 16 at 7).

These claims fail to address anything meaningful about the issues at hand. It is true that the RFC is a legal decision. But SSR 96-8p makes clear that the RFC "must always consider and address medical source opinions." Having rejected Dr. Stevenson, and having found that the state-agency doctor was wrong in concluding that insufficient evidence was present to assess RFC, the ALJ made her RFC without citing any medical source at all. That would not necessarily require remand if the Court were able to follow the path of her reasoning. If it existed, the Commissioner would presumably point it out instead of claiming in a conclusory manner that the ALJ "reasonably found" something whose basis she never explained.

Contrary to the Commissioner's claim, the fact that the Step 3 special technique evaluation did not constitute a RFC finding only supports Stone's position. Social Security Ruling 96-8p instructs ALJs that Paragraph B findings under listing 12.00 do not substitute as RFC assessments. "The mental RFC used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized in the PRTF." SSR 96-8p. As is usual in disability decisions, the ALJ cited boilerplate language on the issue. However, neither she nor the Commissioner has explained how she complied with this directive. The ALJ provided no explanation at all of how "unskilled, simple, routine" work flows from the record. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (stating that an ALJ may not merely translate special technique findings into a RFC without explanation). Moreover,

the "narrative discussion" required by SSR 96-8p is entirely absent from the decision.

As Stone contends, that makes the ALJ's hypothetical question to the vocational expert ("VE") highly problematic. The Commissioner's only response to this issue is what was quoted above: "The ALJ reasonably found that the functional limitations attributable to Stone's depression could be accommodated by a restriction to" the RFC findings stated in the decision. (Dckt. 16 at 7). That is a conclusion, not an argument. It fails to address the issue of the hypothetical question, thereby waiving it. The Commissioner overlooks that a hypothetical must account for the totality of a claimant's limitations. "In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). That is, of course, exactly what the ALJ did here. She did not elaborate on the special technique findings, provided no explanation of how the record supported the RFC of simple work, and then posed the question to the ALJ without explaining what tasks should be excluded because of Stone's moderate limits in concentration.

Because the RFC already requires further consideration, the Court does not remand on the issue of the hypothetical question. Several exceptions exist to the rule in *O'Connor-Spinner*. One involves the scenario in which it is clear that the VE independently reviewed the medical record or heard testimony that directly addressed the claimant's limitations. Although the Commissioner has failed to address the issue at all, the VE did state at the hearing that he had reviewed the file. (R. 48-49). That may or may not have been sufficient to satisfy the applicable standard. The Court, however, declines to address the issue on its own motion.

On remand, the ALJ shall build a logical bridge between the record and the RFC, consider whether the VE had sufficient information to formulate his opinion, and explain her reasoning so that the Court can follow the path that led her to the RFC conclusions.

### Conclusion

Plaintiff Stacey Lynn Stone's Motion for Summary Judgment [14] is granted. The Commissioner's Motion for Summary Judgment [15] is denied. The Commissioner's decision is remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

ENTER:

_____
Daniel G. Martin
United States Magistrate Judge

DATE: May 13, 2015.